# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LYONS, | ) | CASE NO:     5:07-cv-2986 |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Christopher Lyons ("Lyons") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Lyons's claim for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the final decision of the Commissioner should be AFFIRMED.

## I.  Procedural History

On May 1, 2003, Lyons filed an application for SSI and DIB, alleging a disability onset date of November 20, 2000, and claiming he was disabled due to limitations caused by back pain

and diabetes.[1]  (Tr. 90.)  After his applications were denied initially and on reconsideration, Lyons requested an administrative hearing. (Id.)

On December 1, 2005, Administrative Law Judge, Barbara L. Beran ("ALJ"), held a hearing during which Lyons, represented by counsel, testified.  (Tr. 295-349.)  In a decision dated September 29, 2006, the ALJ found that Lyons could perform jobs existing in significant numbers in the national economy, and, therefore, was not disabled.  (Tr. 30-31.)   The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  (Tr. 5.)  On October 1, 2007, Lyons filed a complaint in this Court, seeking judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c).  (Doc. No. 1.)

On appeal, Lyons claims the ALJ committed the following errors: (1) the ALJ erred in failing to find that Lyons's mental impairment, cervical disc herniation, and lumbar bulging discs were severe impairments; (2) the ALJ erred in rejecting the opinion of Lyons's treating physician; (3) the ALJ erred in rejecting the opinion of the consultative psychological examiner; (4) the ALJ erred in finding Lyons's allegations not fully credible; (5) the ALJ's RFC finding is not supported by substantial evidence; and (6) the ALJ erred in adopting the vocational expert's testimony, which was in response to a hypothetical that is not supported by substantial evidence; and (7) the ALJ erred in not utilizing a medical expert at the hearing.  (Doc. No. 14, Plaintiff's Brief at 1, 10-20.)

## II.  Evidence

### Personal and Vocational Evidence

---

[1]Lyons had previously filed applications for DIB and SSI in 1996, 2000, and 2002. Those applications were denied by the State Agency and not appealed.  (Tr.17.)

-2-

Born on March 15, 1965 and age forty-one at the time of the ALJ's decision, Lyons was considered an individual approaching advanced age.  20 C.F.R. § 404.1563(c).  Lyons is a high school graduate and has also completed a year of technical school in medical assistance and earned certificates in medical assistance and electrical assembly.  (Tr. 300-01.)  Prior to his alleged onset date of November 20, 2000, Lyons worked a number of jobs, including the jobs of fast food worker, service station clerk, and machine operator.  (Tr. 304-12.)

In 2004, after his alleged onset date, Lyons worked at various jobs.  (Tr. 83-84.)  Lyons worked for approximately four or five months at Boville Industrial Coatings, doing what his treating physicians described as "light factory type work."  (Tr. 83-84, 244, 304-05.)  Lyons first developed carpal tunnel syndrome while performing this job in December 2004.  He took time off to have corrective surgery in March 2005 and was fired while on leave.  (Tr. 304-05.)

*Medical Evidence*

In May 1998, Lyons complained to his treating physician, Paul Steurer M.D., of back pain that began after he fell off of a ladder at work.  (Tr. 173.)  X-rays showed no fracture or degenerative disc disease.  (*Id*.)  Dr. Steurer diagnosed a lumbosacral strain and prescribed physical therapy and Vicodin.  (Tr. 173.)  Over the next year and a half, Lyons saw Dr. Steurer every few months for chronic back and neck pain.  (Tr. 167-73.)  Dr. Steurer treated Lyons with Soma and various narcotic pain medications, including Ultram, Darvocet, and Tylenol #3.  (*Id.*)

In December 1999, Lyons presented to Dr. Steurer with soreness, achiness, pain and tenderness in his back.  (Tr. 167.)  Dr. Steurer noted that Lyons's back pain would flare up "every once in a while," resulting in "increasing soreness, ache, pain . . . tenderness and discomfort."  (*Id.*)  At that point, Dr. Steurer was "trying to manage [Lyons] conservatively with

a good stretching and exercise program" and prescribed Tylenol #3 for the pain. (*Id.*)

The following month, in January 2000, Lyons applied for disability benefits for the first time. (Tr. 70.) In March 2000, after a State Agency physician, Gary W. Hinzman, M.D., reviewed the record, the State Agency informed Lyons that his impairments were not severe and denied his application. (Tr. 48, 52-53.)

In November 2000, Lyons moved to Illinois to live with his wife. While there, he was treated for back pain and diabetes by Dr. Wenck on approximately a monthly basis. (Tr. 174-184.) At his first office visit, in February 2001, Lyons reported chronic back pain that had persisted for the past three years, and which he had been treating with Ultram and Soma. (Tr. 183.) Dr. Wenck prescribed Naprosyn and Ultram for pain and ordered an MRI of the lumbar spine. (Tr. 184.) On March 2, 2001, Dr. Wenck informed Lyons that the MRI revealed no significant abnormalities. (Tr. 181-82.) Lyons reported that his pain was a nine or ten on a scale of ten and that it had worsened since the last visit because he ran out of Soma. (Tr. 181.) Lyons indicated that his pain was managed best by a combination of Ultram and Soma, but Dr. Wenck refused to prescribe Soma, and again prescribed Naprosyn and Ultram. (*Id.*)

On March 30, 2000, Dr. Wenck prescribed 10 milligrams of Elavil for pain. (Tr. 177, 179.) At Lyons's next office visit on April 14, 2001, Lyons indicated that his pain had significantly improved with the addition of Elavil and that his pain was a 3 out of 10. (Tr. 177.) Lyons requested a work restriction sheet, and reported that he lifted no more than 5 pounds, was most comfortable while sitting, and could not stand for any length of time. (*Id.*) Dr. Wenck provided a restriction sheet indicating that Lyons could lift no more than 10-15 pounds, could sit for 8 consecutive hours, could not stand for more than one consecutive hour, and could not bend,

climb, or twist.  (Tr. 178.)

Lyons last saw Dr. Wenck in October 2001, at which time he reported that his back pain had been acting up with changes in the weather.  (Tr. 174.)  Dr. Wenck increased the dosage of Elavil to 25 milligrams.  (*Id*.)

In addition to treating Lyons for back pain, Dr. Wenck treated Lyons's diabetes.  Lyons initially reported that he did not treat his diabetes because he could not afford the medication.  (Tr. 179, 182-83.)  However, Dr. Wenck discussed the importance of treating diabetes and was able to obtain a cost-free glucometer and supplies for Lyons for a limited time.  (Tr. 179.)  Thereafter, Dr. Wenck noted that Lyons' diabetes was poorly controlled.  (Tr. 174-79.)

Lyons subsequently moved back to Ohio and, in November 2001, reestablished care with Dr. Steurer.  (Tr. 186.)  Dr. Steurer noted that "on exam, [Lyons had] tenderness to palpitation [and] could flex about 60 degrees.  (*Id*.)  Dr. Steurer prescribed Skelaxin, a muscle relaxer, and noted that Lyons did not need any pain medication.  (*Id*.)  On February 19, 2002, Dr. Steurer put Lyons back on Soma and noted that Lyons had a separate cervical dorsal strain.  (Tr. 185.)  On February 26, 2002, Dr. Steurer noted that Lyons had more neck pain and tenderness, but that it was not radicular.  (*Id*.)  Lyons was prescribed Darvocet and instructed to return for a follow-up in three months.  (*Id*.)

In May 2002, Lyons again applied for disability benefits.  (Tr. 49.)  In June 2002, Eli N. Perencovich, M.D., a State Agency physician reviewed the record and completed an RFC assessment.  Dr. Perencovich opined that Lyons could lift/carry 50 pounds occasionally and 25 pounds frequently; stand, walk and sit six hours each in an eight-hour day; frequently stoop, kneel, crouch, crawl, and climb ramps/stairs; occasionally balance and climb ladders, ropes, and

scaffolds, and; needed to avoid all exposure to hazards due to dizziness associated with diabetes. (Tr. 189-91.)  Dr. Perencovich noted that Dr. Wenck's work restrictions were not supported and inconsistent with the clinical and objective findings.  (Tr. 193.)

Nine months later, in March 2003, Lyons returned to Dr. Steurer for treatment of his back pain.  (Tr. 256.)  Dr. Steurer ordered an MRI of the cervical and lumbar spine and prescribed Soma and Ultracet.  (Tr. 256.)  In May 2003, Lyons submitted the present application for disability benefits.  (Tr. 75-76.)

The following month, in June 2003, an MRI of the cervical spine showed (1) disc herniation at C5-C6 with spinal cord compression, (2) bulging discs at C3-C4 and C4-C5, (3) multilevel anterolistheses, and (4) multilevel uncovertebral degenerative changes.  (Tr. 225-26.) The MRI of the lumbar spine revealed (1) a bulging disc at L5-S1, which extended to the caudal aspect of the left neural foramen and was also in proximity to the proximal left S1 nerve root, (2) lumbarization of the sacrum, and (3) minimal endplate degenerative change involving the inferior aspect of the L5 vertebral body.  (Tr. 227.)

On June 13, 2003, Dr. Steurer reviewed the MRIs and noted that the bulging disc at L5-S1 "may be irritating Lyons' S1 nerve root, and that is where he is having his left leg pain."  (Tr. 252.)  Lyons was taking Ultracet for pain, but wanted something stronger because it was not working.  (*Id.*)  Dr. Steurer noted that Lyons would receive epidural injections for relief of the left leg pain.  (Tr. 252.)  Treatment notes through August 2005 reveal that Lyons continued to see Dr. Steurer for pain on a regular basis, sometimes as often as twice a month.  (Tr. 242-53.) Dr. Steurer prescribed various pain medications and muscle relaxers.  (Tr. 245-48.)  Lyons also used heat, stretching, and exercise to manage his pain.  (Tr. 242-43, 245, 247, 249.)

On July 29, 2003, Lyons applied for benefits with Ohio Job and Family Services, claiming work-related injuries to his back and neck.  (Tr. 195.)  Dr. Steurer supported the application with an assessment that Lyons could stand, walk, and sit two to four hours each in a day, one hour at a time, and lift up to ten pounds frequently.  (Tr. 196.)  Dr. Steurer opined that Lyons would be unemployable for at least twelve months.  (Tr. 196.)

On July 31, 2003, John Comley, Psy.D., performed a consultative examination and reported the following in his assessment.  (Tr. 205.)  Lyons reported a history of DUIs, but told Dr. Comley that he stopped drinking in 1997.  (Tr. 205-06.)  Lyons arrived disheveled and reported that he could not work due to his on the job injuries and bulging discs.  (Tr. 205.)  During his interview, Lyons was alert and fully oriented with no memory problems, normal motor activity, and no perception or thought process abnormalities.  (Tr. 207.)  Lyons's IQ scores placed him in the low average range and his mood and affect were pessimistic, angry, inappropriate, and dramatic.  (Tr. 206.)  Dr. Comley diagnosed "Mental Disorder NOS [Not Otherwise Specified] Due to Chronic Pain and Loss of Motion" and "Alcohol Dependence but reported to be in remission."  (Tr. 207.)  Dr. Comley opined that Lyons's mental disorder was a physiological consequence of his back problems, and that his alcohol abuse led to marked distress and clinically significant impairment.  (Tr. 207.)  Dr. Comley did not recommend psychological treatment, as he opined that it would be of no benefit to Lyons.  (Tr. 207.)  After identifying a number of mental limitations, Dr. Comley concluded  that, "with regard to his work situation, [Lyons] should be considered psychologically disabled."  (Tr. 208-09.)   At the same time, however, Dr. Comley recommended that Lyons receive vocational rehabilitation services.  (Tr. 207.)

In August 2003, Lokendra Sahgal, M.D., performed a consultative physical examination at the request of the Ohio Bureau of Disability Determination.  (Tr. 197-204.)  Dr. Sahgal had no access to other medical records and relied on clinical observations and Lyons's self-reported history.  (Tr. 197.)  Lyons reported smoking a pack of cigarettes a day for the past 25 years, but denied any drug or alcohol abuse.  (Tr. 198.)  Clinical testing showed the left lower extremity as having "some decreased sensation" and 4/5 muscle strength in the left hip flexors, hip extensors, and knee flexors.  (*Id*.)  All other muscles had normal strength and the neurological examination was otherwise grossly normal.  (Tr. 198.)  Lyons exhibited no difficulty maneuvering in the examining room or getting off and on the table.  (Tr. 198).  Grasp, manipulation, pinch, and fine coordination was normal in both hands.  (Tr. 199.)  Lyons complained of neck, right shoulder, and back pain, and exhibited restricted range of motion in those areas.  (Tr. 197-99.)  Otherwise, lumbar x-rays showed well-maintained disc spaces and "mild" arthritic changes.  (Tr. 200.)  Dr. Sahgal opined that Lyons may have difficulty lifting or carrying due to his back and neck pain, but had no limitations related to sitting, walking, handling objects, hearing, speaking, or traveling.  (Tr. 199.)

In September 2003, Thomas Vogel, M.D. reviewed the record on behalf of the State Agency.  (Tr. 51, 211-15.)  Dr. Vogel opined that Lyons could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit six hours each in an eight-hour day; frequently balance, stoop, kneel, crouch, and crawl, and; occasionally climb ramps and stairs, but could not climb ladder, ropes, or scaffolds.  (Tr. 212-13.)

The next month, in October 2003, Alice Chambly, Psy.D., reviewed the record on behalf of the State Agency and opined that Lyons had a mental impairment in the category of

-8-

somatoform disorders.  Dr. Chambly concluded that the impairment, which she labeled
"psychological factors affecting medical condition," did not precisely satisfy the diagnostic
criteria in Listing 12.07, and further concluded that it was not severe because it caused no more
than mild limitations in any B criteria.[2]  (Tr. 216, 218.)

That same month, in October 2003, Craig Thompson, M.D. reviewed the record on
behalf of the State Agency.  (Tr. 220-24.)  Dr. Thompson opined that Lyons could lift and carry
20 pounds occasionally and 10 pounds frequently; stand, walk, and sit six hours each in an eight-
hour day; frequently balance, kneel, crouch, and crawl; and occasionally stoop and climb ramps
and stairs, but could not climb ladders, ropes, or scaffolds.  (Tr. 221-22.)  Dr. Thompson opined
that Dr. Steurer's July 2003 opinion that Lyons could lift and carry between 6-10 pounds
frequently and occasionally was not entirely supported by objective evidence in the record.  (Tr.
224.)

In treatment notes from April 6, 2004, Dr. Steurer noted that Lyons "had been in touch
with [the Bureau of Vocational Rehabilitation] and hopefully, they can get him retrained and
assigned to work that he could do."  (Tr. 247.)  Dr. Steurer prescribed Darvocet for pain and
noted that Lyons should do no repetitive bending or lifting, and that "everything should be under
ten pounds."  (Tr. 247.)  In July 2004, Dr. Steurer noted: "we would like to do the epidural
injections once we get the okay."  (Tr. 245.)

_____

[2]To satisfy the B criteria for somatoform disorders, a claimant must have (1) marked
restrictions in activities of daily living; (2) marked difficulties in social functioning; (3)
deficiencies in concentration, persistence, and pace; and (4) repeated episodes of
deterioration or decompensation in work or work-like settings, which cause the
individual to withdraw from that experience or to experience exacerbation of signs and
symptoms.  Listing 12.07.

On August 26, 2004, Lyons presented to the emergency room at Dunlap Memorial Hospital complaining of abdominal pain and vomiting.  (Tr. 265.)  Lyons's glucose level was 11667 mm/dl.  He was admitted and started on an insulin drip.  The same day, he was transferred to Aultman Hospital for further management of his uncontrolled diabetes.  Lyons remained at Aultman Hospital until he was discharged on August 31, 2004.  (Tr. 257.)  The discharge summary reveals the following diagnosis: hypersmolar state, diabetes mellitus, peptic ulcer disease, chronic back pain, pancreatitis, and noncompliance.  (*Id*.)  Lyons was instructed to follow up with his primary care physician in less than two weeks.  (Tr. 258.)

On February 15, 2005, Lyons presented to John Dietrich, M.D. with complaints of hand numbness, right greater than left.  (Tr. 289).  An EMG/NCV confirmed carpal tunnel syndrome and polyneuropathy.  (Tr. 293.)  Dr. Dietrich recommended surgery on Lyons's right hand.  (*Id.*)  Dr. Steurer's treatment notes from the same date indicate that Lyons had been doing "light factory type work," though "some of the bending and lifting" irritated him.  (Tr. 244.)

In March 2005, Dr. Dietrich performed right wrist tenosynovectomy with decompression of the median and ulnar nerves ("carpal tunnel release").  (Tr. 282, 284.)  Over the next few months, Lyons underwent therapy for his hand.  (Tr. 229-41.)  In May 2005, six weeks after surgery, Dr. Dietrich noted that Lyons was still experiencing numbness in his right hand.  Nerve tests revealed "not only median neuropathy, but also diabetic polyneuropathy," and "median neuropathy was graded electrically as severe."  (Tr. 280.)  Dr. Dietrich noted that Lyons "may have paresthesias permanently and may need some Neurontin or things to help him with this."  (*Id.*)  In June 2005, Dr. Dietrich noted that Lyons's right hand was "doing well," his numbness complaints had improved, and his Semmes Weinstein test was "almost normal."  (Tr. 279.)

-10-

*Hearing Testimony*

A hearing was held on December 1, 2005, during which Lyons testified as follows.  In 2004, after his alleged onset date, Lyons worked at various jobs.  He worked in a factory for Boville Industrial Coatings for four months in 2004 and 2005.  (Tr. 83-84, 244, 304-05.)  Lyons got the job through the Bureau of Vocational Rehabilitation ("BVM").  (Tr. 334.)  In December 2004, while on the job, Lyons first developed carpal tunnel syndrome.  He was fired in March 2005 after taking time off to have corrective surgery on his right wrist.  (Tr. 304-05.)  Dr. Dietrich released Lyons back to work in June 2005.  (Tr. 228.)  Lyons was again working with BVM to find another job, but was placed back at the bottom of the list after losing the factory job.  (Tr. 322.)  He was looking for a fast food job or "anything [he felt] he could do" and was looking for work as recently as the week before the December 2005 hearing, but was unsuccessful in his job search.  (Tr. 321-22.)

Vocational expert, Carl Hartung ("VE"), also testified at the hearing as follows. Assuming Lyons had limitations as set forth in the most recent State Agency RFC assessment, that of Dr. Thompson (Tr. 220-224), Lyons could perform his past light work[3] as a fast food worker and service station attendant.  (Tr. 340.)  Assuming Lyons had the additional limitations of minimal or superficial contact with others and no forceful grasping or twisting or heavy

---

[3]Light work is defined as: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  If a claimant can do light work, the claimant can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

vibration activities with his left hand, Lyons could still perform both past jobs.  (Tr. 342.)  If Lyons was further limited to no forceful grasping or twisting or heavy vibration activities with either hand, he could still perform the fast food worker job, but could not perform the service station job.  (Tr. 342.)

Assuming Lyons had the limitations set forth by Dr. Steurer  – "[n]o repetitive bending or lifting, and everything should be under ten pounds"– Lyons would be unable to perform his past work, but could perform the full range of sedentary work.[4]  (Tr. 340-41.)

Assuming Lyons had the limitations set forth in the opinion of the consultative psychological examiner, Dr. Comley (Tr. 209), Lyons would be unable to perform any of his past relevant work.  (Tr. 341.)

Assuming the ALJ found Lyons allegations with respect to his limitations fully credible, Lyons would be precluded from performing any of his past relevant work.  (Tr. 341.)

In response to questioning by Lyons's counsel, the VE further testified as follows.  With respect to each of the hypotheticals given by the ALJ, if Lyons further required an option to sit or stand at will, both past jobs would be eliminated.  (Tr. 343.)  With respect to each of the hypotheticals given by the ALJ, if Lyons missed two or more days per month at a job, he would not be allowed to work.  (*Id.*)

### III.  Standard for Disability

----

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Sedentary work is performed primarily in a seated position totaling approximately 6 hours of an 8-hour workday, with periods of standing or walking generally totaling no more than about 2 hours of an 8-hour workday, and entails no significant stooping. 20 C.F.R. § 404.1567(a).

-12-

A claimant is entitled to receive benefits under the Act when the claimant establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when the claimant cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-step process.  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  Second,  the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

At step one of the sequential analysis, the ALJ found that Lyons engaged in substantial gainful activity since his alleged disability onset date.  (Tr. 19.)  For reasons not explained, however, the ALJ continued through the five-step sequential evaluation and made the following findings.  Lyons established the following impairments that, in combination, are severe: a history of bilateral carpal tunnel syndrome, status post right carpal tunnel release; diabetes mellitus with polyneuropathy; degenerative changes of the cervical and lumbar spine.  (*Id.*)  Lyons's impairments, either singularly or in combination, did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 21.)  Lyons had the residual functional capacity ("RFC") to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance, kneel, crouch, and crawl; occasionally climb ramps and stairs and stoop; never climb ladders, ropes, and scaffolds; and is unable to forcefully grasp/twist or use vibratory tools with the left non-dominant hand.  (Tr. 25.)  Lyons could perform his past light work as a fast food worker and service station attendant.  (Tr. 30.)

Although the ALJ found that Lyons could perform his past work, she noted that there was "a question as to whether either job can be considered past *relevant* work," and, therefore, continued to step five of the sequential process.  At step five, the ALJ found that jobs existed in significant numbers in the national economy that Lyons could perform.  (Tr. 30.)  On the basis of these findings, the ALJ concluded that Lyons was not disabled.  (*Id.*)

### V. Standard of Review

Because Lyons's request for review has been rejected by the Appeals Council, the

-14-

decision of the ALJ is the final decision of the Commissioner and is subject to the Court's review.  The Court's review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the Commissioner's decision and whether the Commissioner employed proper procedures in reaching his conclusion.  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  If substantial evidence for the Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of the Commissioner must be affirmed.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  If the Commissioner's decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the disputed issues of fact differently.  *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

## VI.  ANALYSIS

Lyons asserts the following claims:  (1) the ALJ erred in failing to find that Lyons's mental impairment, cervical disc herniation, and lumbar bulging discs severe impairments; (2) the ALJ erred in rejecting the opinion of Lyons's treating physician; (3) the ALJ erred in rejecting the opinion of the consultative psychological examiner; (4) the ALJ erred in finding Lyons's allegations not fully credible; (5) the ALJ's RFC finding is not supported by substantial evidence; and (6) the ALJ erred in adopting the vocational expert's testimony, which was in response to a hypothetical that is not supported by substantial evidence; and (7) the ALJ erred in not utilizing a medical expert at the hearing.  (Doc. No. 14, Plaintiff's Brief at 1, 10-20.)  Each of

-15-

these claims is discussed below.

**A.  Severe Impairments**

The ALJ found that Lyons had the following impairments that, in combination, were severe: a history of bilateral carpal tunnel syndrome, status post right carpal tunnel release; diabetes mellitus with polyneuropathy, and; degenerative changes of the cervical and lumbar spine.  The ALJ further found that Lyons did not have a severe mental impairment.  Lyons contends, unpersuasively, that the ALJ erred because she failed to find that Lyons's mental impairment, cervical disc herniation, and lumbar bulging discs were severe impairments.

Lyons's claim with respect to the herniated and bulging discs is not well-taken.  The ALJ found that Lyons suffered a severe impairment due to, among other things, "degenerative changes of the cervical and lumbar spine."  In support of this finding, the ALJ discussed the MRI report revealing Lyons's herniated and bulging discs.  The ALJ further cited treating physician records from 2001 to 2005 that consistently documented chronic neck and back pain that significantly limited Lyons's ability to do basic work activities.  In light of the ALJ's reliance on this evidence to support the finding that Lyons had a severe impairment due to "degenerative changes of the cervical and lumbar spine," it is clear that the phrase "degenerative changes of the cervical and lumbar spine" encompasses the herniated and bulging discs in Lyons's spine.

With respect to the contention that the ALJ erred in failing to find a severe mental impairment, Lyons argues that the evidence supports a finding that he has a severe mental impairment.  Lyons, however, invokes the wrong standard.  The issue before the Court is whether the ALJ's finding is supported by substantial evidence.  If it is so supported, whether Lyons's position also is supported by substantial evidence is not relevant.

-16-

The finding that Lyons did not have a severe mental impairment is supported by substantial evidence.  The ALJ noted that Lyons was diagnosed with a mental impairment not otherwise specified and alcohol dependence reported in remission.  In accordance with the regulations, the ALJ then considered Lyons's functional limitations in the following four areas: activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation.  *See* § 404.1520a(c)(3).  According to the regulations, if a claimant's functioning is rated "none" or "mild" in the first three areas and "none" in the fourth area, it is generally concluded that the impairment is not severe.  § 404.1520a(d)(1).

Based on Lyons's daily activities, Lyons's testimony at the hearing, the lack of documentary evidence of a mental impairment, Lyons's ability to participate in the proceedings without any observed interferences from his alleged mental symptoms, and the opinion of Dr. Chambly, the State Agency psychologist, the ALJ concluded that Lyons's mental impairment resulted in no more than mild limitation in any of the first three area and no limitation in the fourth area.  (Tr. 23-24.)  Accordingly, the finding that Lyons's does not have a severe mental impairment is supported by substantial evidence in the record and the ALJ applied the correct standards in arriving at that finding.

For the foregoing reasons, Lyons's claim that the ALJ erred in failing to find that his herniated and bulging discs and mental impairment were severe impairments is not persuasive and should be rejected.

**B.  RFC Finding**

Lyons's second, third, fourth, and fifth claims each relate to the ALJ's RFC finding, and each lack merit.  The ALJ found that Lyons had the RFC to lift/carry twenty pounds occasionally

and ten pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance, kneel, crouch, and crawl; occasionally climb ramps and stairs and stoop; never climb ladders, ropes, and scaffolds; and never forcefully grasp/twist or use vibratory tools with the left non-dominant hand. (Tr. 25.) The ALJ supported this finding with the following substantial evidence.

The ALJ accepted and adopted the opinion of the State Agency physician, Dr. Thompson, and found the additional limitation with respect to Lyons's left hand based on Lyons's testimony and evidence of carpal tunnel syndrome that was not available to Dr. Thompson at the time of his RFC assessment. (Tr. 25.) The RFC finding is further supported by evidence that Lyons worked at a factory for four months after his alleged onset date and Lyons's testimony that he was looking for work in a fast food restaurant or anything else he could do as late as the week before the hearing.

Although the record contains some evidence of greater restrictions, such as Lyons's testimony regarding his symptoms and limitations, Dr. Steurer's opinion regarding Lyons's limitations, and Dr. Comley's opinion that Lyons was disabled due to a mental impairment, the ALJ throughly explained her reasons for rejecting such evidence. The Court addresses each of Lyons's claims challenging the ALJ's rejection of this evidence and finds each claim unpersuasive.

**1. Rejection of Treating Physician Opinion**

Dr. Steurer assessed that Lyons could stand, walk, and sit two to four hours each in a day, one hour at a time; could lift up to ten pounds frequently and occasionally; was moderately limited in bending, handling, and repetitive foot movements, and; was markedly limited in

reaching.  (Tr. 196.)  Dr. Steurer further opined that Lyons would be unemployable for at least

twelve months.  (*Id.*)  The ALJ rejected Dr. Steurer's assessment and adopted the RFC

assessment of Dr. Thompson.  (Tr. 25.)  Lyons contends that the ALJ erred by failing to give

controlling weight to Dr. Steurer's opinion and to provide sufficient reasons for rejecting the

opinion.  Neither contention is well-taken.

     First, Dr. Steurer's opinion with respect to Lyon's RFC was not entitled to controlling

weight.  The regulations provide that medical opinions of a treating source, if well-supported by

medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with

other substantial medical evidence in the record, must be accorded controlling weight.

§ 404.1527; SSR 96-2p.  Even where those opinions do not merit controlling weight, the

regulations require that the Commissioner consider the opinions and give "good reasons" for the

weight given to those opinions.  *Id.*

     The regulations further provide that treating physician opinions on some issues, such as a

claimant's RFC or whether a claimant's impairments meet or equal the requirements of a listed

impairment, are not medical opinions and will not be given any special significance.

§ 404.1527(e)(2)-(3).  Although the Commissioner must consider medical source opinions on

such issues, the final responsibility for deciding such issues is reserved to the Commissioner.

§ 404.1527(e)(2).

     Dr. Steurer's RFC assessment is not a medical opinion, but is an opinion on an issue

reserved to the Commissioner.  As treating source opinions on issues reserved to the

Commissioner are not entitled to any special significance, the ALJ did not err in failing to give

Dr. Steurer's RFC opinion controlling weight.

Second, the ALJ provided good reasons for rejecting Dr. Steurer's opinion.  The ALJ rejected Dr. Steurer's RFC assessment because it was not supported by objective medical evidence, but appeared to be based on Lyons's subjective complaints of symptoms and limitations, which, as discussed in Section VI.B.3 below, the ALJ found not fully credible.  The ALJ also noted that Dr. Steurer treated Lyons conservatively with muscle relaxers and pain medication, and advised Lyons to use heat, ice and stretching.

Lyons argues, unpersuasively, that these reasons are not sufficient because Dr. Steurer reacted to the MRIs showing bulging and herniated discs and measured Lyons's range of motion on multiple occasions.  While Dr. Steurer's opinion may have been based, in part, on the fact that the MRIs revealed herniated and bulging discs, a diagnosis of herniated and bulging discs does not, without more, support the opinion that Lyons could lift and carry no more than ten pounds.  Similarly, evidence of a limited range of motion does not translate into an inability to lift and carry more than ten pounds.

With regard to the ALJ's reasoning that Dr. Steurer relied on Lyons subjective complaints in forming his RFC opinion, Lyons argues it is an insufficient reason because "there is no indication that Dr. Steurer asked Lyons how much he felt he could lift and based his opinions on that."  (Doc. No. 14 at 15.)  The ALJ did not state or suggest that Dr. Steurer relied on Lyons's own assessment of exactly how much he could lift.  Rather, the ALJ found that Dr. Steurer relied on Lyon's "subjective reports of symptoms and limitations."  Dr. Steurer need not have literally asked Lyons how much he could lift to have relied on Lyons's subjective reports of symptoms and limitations.

For the foregoing reasons, the ALJ did not err in rejecting Dr. Steurer's opinion and

Lyons's contention to the contrary should be rejected.

### 2. Rejection of Consultative Psychological Examiner's Opinion

The consultative psychological examiner, Dr. Comley, opined that Lyons had a mental disorder, not otherwise specified and alcohol dependence reported to be in remission.  (Tr. 207. )  After identifying a number of mental limitations, Dr. Comley opined that, "with regard to his work situation, [Lyons] should be considered psychologically disabled."  (Tr. 208-09.)   Lyons claims that the ALJ erred in rejecting Dr. Comley's opinion because "the ALJ cannot disregard opinions of a consulting physician which are favorable to a claimant."  This is an inaccurate statement of the law.

The regulations provide that unless the Commissioner gives the opinion of a treating source controlling weight, the Commissioner will consider all of the following factors in deciding the weight to assign to a given medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other relevant factors.  § 404.1527(d).  In considering the first factor, the ALJ should generally give more weight to the opinion of an examining source than to that of a source that has not examined the claimant.  § 404.1527(d)(1).  Thus, a consultative examiner's opinion, such as that of Dr. Comley, is generally entitled to more weight than the opinion of a State Agency physician. However, the examining relationship is not the only factor the ALJ was required to consider.

Here, the ALJ considered several relevant factors and rejected Dr. Comley's opinion for the following reasons, each of which is supported by the record.  First, the ALJ noted that Lyons had never sought treatment for any mental health condition.  Indeed, aside from Dr. Comley's opinion as a consultative examiner, the record contains no evidence that Lyons had or ever

complained of a mental impairment. Second, the ALJ noted that Lyons's "prior application for disability did not indicate the presence of significant mental health symptoms, and there was no evidence to establish a recent decline in functional status." (Tr. 26.) The ALJ further found that the evidence of record did not indicate a degree of impairment that would be considered severe. Finally, the ALJ noted that Dr. Comley relied "quite heavily on [Lyons's] subjective presentation and report of his symptoms and limitations and seemed to uncritically accept as true, most, if not all, of what [Lyons] reported." (Tr. 26.) Given the ALJ's credibility finding, discussed in Section V.B.3 below, this reasoning further supports the ALJ's rejection of Dr. Comley's opinion.

For the foregoing reasons, the ALJ did not err in rejecting Dr. Comley's opinion, and Lyons's claim to the contrary should be rejected.

### 3. Credibility Finding

Although Lyons raises the ALJ's credibility finding as an issue, he fails to make any argument that the credibility finding was erroneous. It is not the Court's function to search the administrative record for evidence to support a party's contention. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). Accordingly, the issue should be deemed waived.

However, even if the Court considers Lyons's perfunctory argument, the credibility finding is supported by substantial evidence in the record and the ALJ's decision contains an

extensive discussion setting forth the reasons for the credibility finding.  (Tr. 26-29.)  The ALJ's credibility finding is entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  The ALJ found that Lyons's medically determinable severe impairments could reasonably be expected to cause some of his symptoms, but that the record did not contain sufficient objective medical evidence to substantiate the severity of the symptoms and degree of limitations alleged.  (Tr. 26.) Among other things, the ALJ relied on the fact that Lyons looked for work and actually did work for several months during the period he claimed to be disabled, the non-aggressive nature of the treatment Lyons received for his back and neck pain, the opinions of the consultative medical examiner and reviewing physicians, and inconsistencies in Lyons's testimony and the record. Although the decision reveals a number of other factors on which the ALJ's credibility finding was based, in light of these reasons alone, the credibility finding is supported by substantial evidence.  Therefore, even if the Court considers the merits of Lyons's conclusory claim, the claim should be rejected.

## C.  Adoption of VE's Testimony Based on Inaccurate Hypothetical

If a vocational expert testifies in response to a hypothetical question that precisely sets forth all of the claimant's impairments, the experts response constitutes substantial evidence for a finding of either disability or nondisability.  *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1988).  Lyons claims that the ALJ erred by relying on the VE's testimony because the testimony was in response to a hypothetical that inaccurately portrayed Lyons's limitations.  This claim is not well-taken for two reasons.

First, for the reasons discussed in the preceding section, the ALJ's RFC finding is

-23-

supported by substantial evidence and therefore, the hypothetical question to the VE, which was

based on that RFC finding, was an accurate portrayal of Lyons's limitations.

Second, even assuming the hypothetical did not accurately portray Lyons's limitations,

the ALJ's conclusion that Lyons was not disabled was not based on the VE's testimony.  The VE

testified that, given the hypothetical representing the ALJ's RFC finding, Lyons's could perform

some of his past relevant work.  However, the ALJ found that there was an issue as to whether

the past work was past "relevant" work and gave Lyons the benefit of the doubt that it was not

past relevant work.  Therefore, the ALJ did not deny Lyons's disability application based on the

VE's testimony, which was relevant to a determination at step four, but proceeded to the step

five inquiry of whether Lyons could perform jobs that existed in significant numbers in the

national economy.

At step five, the ALJ relied, not on the VE's testimony, but on the Medical Vocational

Guidelines at 20 C.F.R. pt. 404, Subpt. P. App. 2, § 201.28, § 202.21, which directed a finding of

"not disabled."[5]  The ALJ concluded as follows:

> Based on [an RFC] for "essentially the full range of light and sedentary work,
> considering the claimant's age, education, and work experience, a finding of "not
> disabled" is directed by the Medical-vocational Rules 201.38 and 202.21.  It
> should be noted that although the claimant has some non-exertional limitations,
> concerning the use of his non-dominant left hand (*i.e.*, no forceful grasp/twist or
> use of vibrating tolls), they do affect the claimant's ability to use his hands for
> fine manipulation or non-forceful grasping and, therefore, do not significantly
> erode the occupational base of sedentary and light work (*see generally* SSR 85-15
> and SSR 83-10).

Therefore, even assuming the ALJ's hypothetical to the VE was inaccurate, the ALJ's disability

_____

[5]Lyons does not challenge the ALJ's use of the Medical Vocational Guidelines and, thus,
waives any argument that the ALJ erred in relying on them.

finding was not dependent on the validity of the VE's testimony.

For the foregoing reasons, Lyons's claim regarding the hypothetical question to the VE lacks merit and should be rejected.

**D. Failure to Use  Medical Expert At Hearing**

Lastly, Lyons claims that the ALJ erred in failing to consult a medical expert at the hearing.  However, the ALJ was not required to do so.  An ALJ has discretion regarding whether to consult a medical expert at a claimant's hearing.  *See* 20 C.F.R. § 404.1529(b).  The only time an ALJ is required to consult a medical expert is when the ALJ makes a finding of medical equivalence under the listings.  *See* 20 C.F.R. §§ 404.1526(b) and 416.926(b).  Here, the ALJ did not make a finding of medical equivalence, so he was not required to obtain the services of a medical expert.

Lyons contends that the ALJ could not have understood the effects of Lyons's impairments without the assistance of a medical expert.  However, the ALJ considered several medical source opinions on the effects of Lyons's impairments, and clearly explained her reasons for adopting some and rejecting others. Based on the medical reports and opinions that the ALJ credited, this Court cannot determine that the ALJ's decision not to consult a medical expert was erroneous.  Accordingly, Lyons's final claim should also be rejected.

Each of Lyons's claims are meritless.  The ALJ's decision is supported by substantial evidence in the record and the ALJ applied the correct standards in reaching the decision. Therefore, Lyons claims should be denied.

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the decision of the

-25-

Commissioner be AFFIRMED and judgment entered in favor of the Commissioner.


/s/ Nancy A. Vecchiarelli_____
United States Magistrate Judge

Date:  June 16, 2008


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).